IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

STATE OF TENNESSEE

COUNTY OF SHELBY

Case No. 22-SW-362

**ATTACHMENT C**
**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, **Anthony Householder**, a Special Agent with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND**

I am a Special Agent with the FBI assigned to the Memphis Division and have been a Special Agent since July 2012. I am currently assigned to the Child Exploitation & Human Trafficking Task Force, which is charged with investigating matters involving the sexual exploitation of children, human trafficking, and child sexual abuse material (CSAM). I have participated in various trainings and investigations involving online and computer related offenses and have been involved with the execution of several search warrants, including those involving searches and seizure of cellular telephones, digital media and electronically stored information.

1. I make this affidavit in support of an application for a search warrant of a gray Apple iPhone, inside of a black case, cellular telephone number (901) 502-2159 (hereinafter referred to as "Device") seized from the subject, Mark McDaniel, (hereinafter referred to as "Subject") on April 15, 2022 by the Shelby County Sheriff's Office pursuant to a search warrant and is currently stored in the evidence control room at the FBI Memphis Division, 225 North

1

Humphreys Blvd Suite 3000, Memphis, Tennessee 38120. The purpose of this application is to locate and seize items which constitute instrumentalities, fruits, and evidence of violations of Title 18, U.S.C. § 2423(b) (Travel with intent to engage in illicit sexual conduct). The information to be searched is described in the following paragraphs and in **Attachment B**.

2. The following information was obtained through observations and conversations of your affiant personally, through the assistance of other law enforcement agents and agencies, including their reports, and through other sources specifically named in this affidavit. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of violations of Title 18, U.S.C. § 2423(b) will be located within the Device, as described in **Attachments A and B**.

## APPLICABLE STATUES AND DEFINITIONS

3. Title 18, U.S.C. § 2423(b) makes it a federal offense for any person to travel in interstate commerce or to travel into the United States, or a United States citizen or alien admitted for permanent residence in the United States to travel in foreign commerce, with a motivating purpose of engaging in any illicit sexual conduct with another person.

4. As it is used in 18 U.S.C. § 2423(b), the term "illicit sexual conduct" means a sexual act (as defined in section 2246) with a person under 18 years of age that would be in violation of chapter 109A if the sexual act occurred in the special maritime or territorial jurisdiction of the United States.

5. The term "minor," as used herein, is defined pursuant to Title 18, U.S.C. § 2256(1) as "any person under the age of eighteen years."

## INVESTIGATION

1.  On or about November 3, 2022, the FBI Memphis Division was contacted by the Shelby County District Attorney General's Office regarding an investigation conducted by the Shelby County Sheriff's Office. The investigation was regarding the alleged statutory rape of a minor female, hereinafter referred to as "G.C." by an adult male, Mark McDaniel, hereinafter referred to as "McDaniel". According to the investigation, the alleged incidents occurred several times between May 2021, when McDaniel and G.C. traveled to Chicago, Illinois with their drill team, and July 2021.

2.  During a recorded interview with the Shelby County Sheriff's Office on or about April 15, 2022, McDaniel stated he had sex with G.C. on multiple occasions. McDaniel indicated the first time he had sex with G.C. was in Illinois in May 2021. McDaniel had sex with G.C. in the stairwell of the hotel where they were staying. At the time they had sex in the hotel in Illinois, G.C. was 14 years old and McDaniel was 23 years old.

3.  According to G.C. during a recorded interview with the FBI on December 6, 2022, McDaniel also engaged in illicit sexual conduct with G.C. in the van while they were traveling to the hotel in Illinois from Shelby County, Tennessee. This was the first instance of sexual contact between G.C. and McDaniel. G.C. corroborated McDaniel's statements they also had penile/vaginal sex at the hotel in the stairwell.

4.  Prior to traveling to Illinois, McDaniel made sexually suggestive comments to G.C. McDaniel stated to G.C. he would be providing oral/vaginal sex on G.C. During the interview with the FBI, G.C. indicated McDaniel stated G.C. was old enough to get her "pussy ate."

5. Both G.C. and McDaniel were residents of Shelby County Tennessee at the time they traveled to Illinois and McDaniel engaged in illicit sexual conduct with G.C.

6. During the recorded interview with the Shelby County Sheriff's Office, McDaniel indicated he was aware G.C. was a minor at the time they were engaged in the illicit sexual conduct. G.C. corroborated McDaniel's admission regarding her age during her interview with the FBI. G.C. stated she told McDaniel her age prior to going to Illinois and he commented he talked to girls her age before.

7. During the recorded interview with the FBI, G.C. indicated the sexual relationship began in the van on the trip to Chicago and continued when they returned to Shelby County. The sexual relationship between G.C. and McDaniel ceased sometime around July or August 2021.

8. During the interview, G.C. indicated she communicated with McDaniel by cellular telephone. She knew McDaniel's telephone number to be (901) 502-2159. That was the only phone number G.C. utilized to contact McDaniel. G.C. confirmed they communicated via voice calls, Face Time and text messaging.

9. G.C. indicated on one occasion, McDaniel utilized his cellular telephone to take a photograph of G.C. She also indicated she sent photographs of herself to McDaniel's cellular telephone at telephone number (901) 502-2159. G.C. indicated she was clothed in the photos McDaniel took of G.C. and the photos she sent to McDaniel.

10. G.C. provided her consent for investigators to conduct a forensic analysis on her cellular telephone. Investigators found messages exchanged between G.C. and McDaniel. On 10/12/2021 at approximately 9:33:07 PM, G.C. sent a message to McDaniel's telephone, telephone number (901) 502-2159, that read, "I'm just gonna get this off my chest. You used me. You just wanted some release and you used me to do it. I believe you never liked me to begin

with. The only reason you chose me was because I was quiet and to myself, that way I wouldn't tell nobody. That way you wouldn't get in trouble. I just wanted to get this off my chest because this is how I fell and this officially goodbye."

11. On 10/12/2021 at approximately 9:41:05PM, McDaniel responded to G.C. from telephone number (901) 502-2159, stating "Wrong and yes I like you cuz of who you are not just cuz of you being quiet and I don't use anyone that agree to have sex or ask me to fuck them when they want it. I don't even text you cuz you dint text me no more and plus you said you wheee done with me period and that we could just be cool but now you wait what months to say something when you could have said something then {Redacted Name}, I actually have love for you and that I trust you and that you are a very smart girl, only thing is I wish you were older".

12. During her interview, G.C. indicated after she told McDaniel her age, he told her he talked to other girls who were her age before. McDaniel stated in his interview with the Shelby County Sheriff's Office that he was talking to another 15 or 16 year old girl who dated a 35 year old guy before she met McDaniel.

13. A subpoena was served on AT&T seeking subscriber information for the phone number (901) 502-2159 from 01/01/2021 through 05/01/2021. On December 5, 2022, AT&T responded to the subpoena. The financially responsible party for the account is Michael McDaniel. Open source database checks confirm Michael McDaniel and Mark McDaniel both resided at 6149 Live Oak Cove, Memphis, Tennessee. It appears Michael McDaniel, who is 55 years old, and Mark McDaniel have a familial relationship.

14. The records provided by AT&T also confirm voice calls between the number associated with G.C. and the number associated with McDaniel (901) 502-2159 between May 2021 and September 2021.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

1.  Based on my knowledge and experience, cellular phones can also be considered portable data storage devices which contain several data storage features contained in one device. I know that deleted photos or deleted text message can likely be retrieved from cell phones and valuable information cannot be obtained through cell phone records maintained by the cell phone provider. There are various applications which are intended to be installed on Smart phones. These third party applications are intended to communicate with the cell network, Internet, or the phone's communication features. I know these applications can be used for monetary transactions, email, short message services (SMS), Multi-Media Services (MMS) and for placing Internet-based phone calls. I know based on my training and experience that data found in the databases of installed applications are relevant to criminal investigations.

2.  Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

3.  There is probable cause to believe that things that were once stored on the Subject device may still be stored there, for at least the following reasons:

    a.  Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later

AH

using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space -that is, in space on the storage medium that is not currently being used by an active file -for long periods of time before they are overwritten. In addition, a computer's operating system also may keep a record of deleted data in a "swap" or "recovery" file.

c. Wholly apart from user-generated files, computer storage media - in particular, computers' internal hard drives - contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

4. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the device were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the device because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks were recently active. Web browsers, email programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can 15 record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge

about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

  e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

  f. I know that when an individual uses an electronic device to conduct the aforementioned criminal activity, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain the following: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offenses and identity of the perpetrator(s).

5. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

6. *Manner of execution.* Because this warrant seeks only permission to examine the device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premise. Consequently, I submit there is reasonable cause for the court

to authorize execution of the warrant at any time in the day or night.

## JURISDICTION

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711, 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## CONCLUSION

15. Based on the forgoing factual information, your affiant submits there is probable cause to believe that violations of Title 18 U.S.C. § 2423(b) have been committed, and evidence of those violations is located in the content of the Device. Your affiant respectfully requests that the Court issue a search warrant authorizing the search and seizure of items described in **Attachment A**.

AND FURTHER, AFFIANT SAITH NOT.

_____
Anthony Householder
Special Agent
Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 41 by telephone this the 8th day of December, 2022.

_____
Hon. Annie T. Christoff
United States Magistrate Judge